## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

MICHAEL DEWAYNE SPOOR,    )
    )
        Petitioner,    )
    )
    vs.    )    **Case No. CIV-09-1319-M**
    )
JUSTIN JONES,    )
    )
        Respondent.    )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, brings this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent has filed a response to the Amended Petition and filed the relevant state court Trial Transcript (T. Tr.) and the Original Record (O.R.). Petitioner has filed a Reply, and the matter is at issue. For the following reasons, it is recommended that the Amended Petition be denied.

## Procedural History

Petitioner was convicted of assault and battery with a deadly weapon and sentenced to 20 years imprisonment in the District Court of Lincoln County, Case No. CF-2005-247. *See* O.R., p. 178.[1] Petitioner filed a direct appeal, and the Oklahoma Court of Criminal Appeals (OCCA) affirmed. *See* Response, Ex. 3. Thereafter, the state court denied

---

[1] Petitioner was found not guilty of assault and battery with a dangerous weapon (Count II). *See* O.R., p. 179.

Petitioner's application for post-conviction relief.  *See id.*, Ex. 8.  Petitioner did not appeal, but instead filed a second application for post-conviction relief which was also denied and the denial affirmed on appeal.  *See* id, Exs. 5, 9.

## Petitioner's Claims

In his Amended Petition, Petitioner raises ten grounds for habeas relief.  In Grounds One and Two, Petitioner alleges insufficiency of the evidence.  *See* Amended Petition, pp. 4-5.[2]  In Grounds Three, Four and Six, Petitioner alleges a constitutional violation through the suppression of exculpatory evidence and the trial court's failure to grant a new trial based on that suppression.  *See id.*, pp. 5-6, 8.  Petitioner alleges in Ground Five that an erroneous jury instruction deprived him of due process.  *See id.*, p. 7.  In Grounds Seven and Nine, Petitioner asserts claims of ineffective assistance of counsel.  *See id.*, pp. 9, 11.  In Ground Eight, Petitioner alleges a violation of due process through the State's "failure to collect evidence."  *Id.*, p. 10.  Finally, in Ground Ten Petitioner alleges cumulative error.  *See id.*, p. 12.

## Testimony at the Jury Trial

The relevant testimony at trial established that in November 2005, Mr. Michael Cole was dating Debra Ragland - Petitioner's ex-wife.  *See* T. Tr. pp. 61-62.  Petitioner and Mr. Cole had an argument concerning the relationship, and in the early morning hours of November 22, 2005, Petitioner slashed the tires on Mr. Cole's car which was parked at Ms.

---

[2]The Amended Petition is not paginated.  Therefore, reference herein to the page numbers reflects the Court's Electronic Case Filing (ECF) pagination.

Ragland's house.  *See id.*, pp. 63, 177.  Mr. Cole called Petitioner's cell phone, and the two

men argued.  *See id.*, pp. 65, 177.  Petitioner immediately returned to Ms. Ragland's house.

*See id.,* pp. 65, 177.

Mr. Cole testified that Petitioner drove through the yard and came "straight at [him]."

*Id.*, p. 67.  Realizing that Petitioner "wasn't stopping," Mr. Cole "jumped out of the way at

the very last second."  *Id.*  According to Mr. Cole, Petitioner buried "three-quarters" of his

truck inside the house.  *Id.*, p. 68.  Mr. Cole stated that Petitioner did not try to stop and

appeared to be trying to "run [him] over."  *Id.*  Petitioner testified that he was simply driving

"way faster than [he had] realized" and had been unable to stop when he saw Mr. Cole.  *Id.*,

pp. 177-78, 185-87.

After his car hit the house, Petitioner exited his damaged vehicle, and as he stepped

out, Mr. Cole hit him on the head with a plastic and styrofoam "Igloo cooler."  *Id.*, pp. 70-71,

178-79.  The men then "started to fight" and Mr. Cole was stabbed at least twice.  *Id.* at pp.

71-72, 179.  Mr. Cole testified that although he had a knife in his coat pocket, he never had

it in his hand or used it in any manner.  *See id.*, pp. 73-74, 89, 94-95, 97-98.  Petitioner

testified that Mr. Cole did in fact have a knife in his hand and that he stabbed Petitioner first.

*See id.*, pp. 178-79.

### Standard Governing Habeas Review

When the OCCA denies a claim on the merits, the Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA) provides the standard for habeas review.  Under the AEDPA,

habeas relief may be granted only if the OCCA's adjudication of the merits of a federal claim

has resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1).  Under this standard, judicial review is directed to the result of the OCCA's decision, not its reasoning.  *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the OCCA's decision unless we conclude that its result - not its rationale - is 'legally or factually unreasonable.'") (citing *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)).

A decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000).  A decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "[T]he AEDPA's conception of objective unreasonableness lies 'somewhere between clearly erroneous and unreasonable to all reasonable jurists.'"  *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)).  Thus, the AEDPA imposes "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, __U.S.__, 131 S.Ct. 1388, 1398 (2011) (citations and internal quotation marks

omitted).   The AEDPA further mandates that factual findings made by a state trial or appellate court are presumed correct and may be rebutted only by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

<u>**Analysis of Properly Exhausted Claims**</u>

**I.  <u>Grounds One and Two - Insufficiency of the Evidence</u>**

Petitioner alleges in Ground One that there was insufficient evidence to overcome his self-defense theory.  Amended Petition, p. 4.  In Ground Two, Petitioner claims that there was insufficient evidence to prove the elements of the charged offense beyond a reasonable doubt.  *Id.*, p. 5.  The undersigned concludes that habeas relief is not warranted on these claims.

On habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Id.*  In applying this standard, the Court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'"  *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (citation omitted)).   Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support a conviction.  *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998).

On direct appeal, the OCCA rejected both Petitioner's claims of insufficient evidence. Response, Ex. 3, p. 1.  Because the OCCA applied the *Jackson* standard,[3] this Court's task is limited to inquiring whether the OCCA's decision applying that standard was reasonable. *See Brown v. Sirmons*, 515 F.3d 1072, 1089 (10th Cir. 2008).

To obtain a conviction for assault and battery with a deadly weapon under Oklahoma law, the State had to prove that Petitioner:  (1) assaulted and battered, (2) Mr. Cole, (3) with a deadly weapon.  *See* Okla. Stat. tit. 21 § 652(C); OUJI-CR 4-6.  "Assault" is "any willful and unlawful attempt to offer to do a bodily hurt to another with force or violence."  OUJI-CR 4-2.  "Battery" is "any willful and unlawful use of force or violence upon the person of another."  OUJI-CR 4-3.  A deadly weapon is defined as "any instrument designed or constructed to cause death or great bodily injury."  OUJI-CR 4-28.

Because Petitioner raised a self-defense theory, the State was also required to prove beyond a reasonable doubt that Petitioner was not acting in self-defense.  *See* OUJI-CR 8-49. To accomplish that, the State had to show Petitioner:  (1) was the aggressor, (2) provoked the altercation, or (3) voluntarily entered into mutual combat.  *See* OUJI-CR 8-50.

---

[3]The OCCA did not cite *Jackson*, instead relying on an Oklahoma case, *Spuehler v. State*, 709 P.2d 202 (Okla. Crim. App. 1985).  *See* Response, Ex. 3, p. 1, n. 2.  *Spuehler* applied *Jackson* to an insufficiency of the evidence claim.  *See Spuehler v. State*, 709 P.2d at 203-204.  As the appellate court applied the correct analogous standard, its decision requires deference.  *See Turrentine v. Mullin*, 390 F.3d 1181, 1203 (10th Cir. 2004) ("Although the OCCA did not directly cite *Jackson*, it applied an analogous state standard . . . ; [w]e therefore ask whether the OCCA's decision was contrary to or involved an unreasonable application of *Jackson*, or whether it was based on an unreasonable determination of the facts in light of the evidence presented.").

**Ground One**

In Ground One, Petitioner challenges the State's evidence to overcome his self-defense theory.  Amended Petition, p. 4.  Specifically, Petitioner argues that he had a legal right to "stand his ground" and "protect himself," because Mr. Cole immediately attacked Petitioner with the "Igloo cooler" and was the first to use a knife.  Response, Ex. 1, pp. 8-9.[4]

Mr. Cole disputed that he used a knife, and Petitioner suggests that "Mr. Cole's word against [Petitioner's] as to exactly what happened" was sufficient to prevent the State from overcoming the self-defense theory beyond a reasonable doubt.  *See id.*, p. 10.  For two reasons, the undersigned finds this argument meritless.

First, the Court must view the facts in a light most favorable to the State and "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason."  *Messer v. Roberts*, 74 F.3d at 1013.

The jury heard both Mr. Cole and Petitioner agree that Mr. Cole hit Petitioner with an ice chest and heard them disagree regarding whether Mr. Cole had a knife in his hand. *See supra* p. 3.  The jury obviously had an opportunity to weigh the credibility of each witness, and their resolution of the evidence was within the bounds of reason.

Second, Petitioner's claim would fail even if the Court credited his version of the facts

---

[4]Petitioner refers the Court to his "attached 'Statement of Facts'" to explain his theory. Amended Petition, p. 5.  However, Petitioner did not attach a statement of facts.  Perhaps for that reason, Respondent assumed Petitioner was relying on the same arguments he made on direct appeal. Petitioner did not question that reliance in his Reply.  For that reason, the undersigned has also referred to Petitioner's direct appeal arguments to supplement his Amended Petition.

as true because Petitioner's testimony supports a finding that he was an aggressor and/or voluntarily entered into mutual combat, thus arguably negating Petitioner's claim of self-defense.

For example, Petitioner admitted that only a short time before the altercation, he had slashed Mr. Cole's tires. *See* T. Tr., p. 177. Petitioner also admitted that when Mr. Cole called him on the phone and told him he was a "chicken shit" and that he should "put his hand on [Cole] not his truck[,]" Petitioner took that to mean Mr. Cole "wanted [Petitioner] to come fight him[,]" so Petitioner "hung up on him . . . turned around in [a] parking lot," and "headed back." *Id.* This testimony was sufficient to show beyond a reasonable doubt that Petitioner provoked the altercation. *See* OUJI-CR 8-53 ("A person is an aggressor [for purposes of self-defense] when that person by his/her wrongful acts provokes, brings about, or continues an altercation.").

Additionally, Petitioner testified that *before* the fight began he saw Mr. Cole with a knife in his hand and that *thereafter* Petitioner grabbed his own knife and "walked towards [the victim]." T. Tr., pp. 178-79. A rational trier of fact could have found that this admission proved beyond a reasonable doubt that Petitioner voluntarily entered into mutual combat. *See* OUJI-CR 8-56 (defining "mutual combat" for purposes of self-defense as a "fight between two or more parties into which each party has entered willingly").

Petitioner's own testimony provides sufficient evidence that he either provoked the altercation and/or entered into mutual combat. Under either scenario, the defense of self-defense was overcome beyond a reasonable doubt.

8

For these reasons, the OCCA did not act unreasonably when it concluded that Petitioner's Ground One was without merit under *Jackson*.

### Ground Two

In a related claim, Petitioner challenges the sufficiency of the State's evidence as to the elements of: (1) assault and battery, (2) with a deadly weapon, and (3) with intent to take human life.  Amended Petition, p. 5; Response, Ex. 1, p. 12.  The undersigned finds that as a matter of law, the State was not required to prove intent to take a human life.  Further, the OCCA's rejection of the claim on the remaining two elements was reasonable under *Jackson*.

### The Element of "Assault and Battery"

Petitioner correctly notes that "assault and battery" requires an "unlawful" action. Response, Ex. 1, p. 13; *see also supra* p. 6.  Petitioner argues that because he was acting in self-defense, the State failed to prove that his conduct was "unlawful."  Response, Ex. 1, p. 13.  However, a rational trier of fact could have found beyond a reasonable doubt that Petitioner did not act in self-defense.  *See discussion supra* pp. 7-8.  Without the benefit of self-defense, Petitioner's action against Mr. Cole was "unlawful."  Thus, the OCCA's rejection of this argument on direct appeal was reasonable.

### The "Deadly Weapon" Element

For this element, Petitioner alleges that the State failed to submit any evidence regarding the type of knife he used to stab Mr. Cole, and whether that knife had been "designed or constructed" to cause death.  Response, Ex. 1, pp. 13-14.  Habeas relief is not available on this argument.

By failing to have any witness testify regarding the type of knife Petitioner used against Mr. Cole, or whether the manufacturer of the knife designed it to be deadly, the State arguably failed to prove that the knife was "per se" deadly.[5]   However, this was not fatal to the State's case because the question of the knife's deadliness then became one for the jury. *See Beeler v. State*, 334 P.2d at 806 (holding that the jury "must be the judge" of whether a weapon was lethal and should consider the weapon's capability to produce death or great bodily harm in the manner in which it was used).

The State introduced the knife into evidence at trial. *See* T. Tr., pp. 118-19.  The jury was able to see that the knife had a handle and a sharp, very pointed blade. *See id.*, p. 242.  They also heard testimony that the knife caused enough physical damage to Mr. Cole that his "insides" were "outside" of his body, he had to be flown via helicopter to the hospital, and he spent seven hours in surgery. *See id.*, pp. 71, 75-77.  Looking at this evidence in a light most favorable to the State, it is clear that a rational trier of fact could have found that Petitioner's knife was a "deadly weapon."  Consequently, the OCCA acted reasonably when it rejected this argument under *Jackson*.

## **The Element of Intent to Kill**

Petitioner seeks federal habeas relief on grounds that the State failed to prove beyond a reasonable doubt that he intended to kill Mr. Cole. *See* Response, Ex. 1, pp. 14-16.

---

[5]In Oklahoma, some weapons are deemed deadly "as a matter of law." *Beeler v. State*, 334 P.2d 799, 806 (Okla. Crim. App. 1959).  For example, a knife is "per se" deadly if it is a "dagger, bowie knife, dirk knife, switch blade knife, spring-type knife or a knife having a blade which opens automatically." *Black v. State*, 21 P.3d 1047, 1070 n. 22 (Okla. Crim. App. 2001).

However, this argument cannot support habeas relief because even though the jury was instructed on the element, the State was not required to prove it under Oklahoma law.

In *Goree v. State*, 163 P.3d 583 (Okla. Crim. App. 2007), the state appellate court held that when the Oklahoma legislature amended Okla. Stat. tit. 21 § 652 in 1992, it deleted the "intent to take human life" element.  *Goree v. State*, 163 P.3d at 584.  Thus, the crime of assault and battery with a deadly weapon does not include an intent to kill element in Oklahoma.  *See id.  Jackson* requires sufficient evidence for the "essential" elements of a crime.  *See Jackson v. Virginia*, 443 U.S. at 319.  Here, the "intent to kill" was not an essential element under Oklahoma law; consequently, there would be no violation of the federal constitution even if the State had failed to prove the element.

### Summary

For the above state reasons, the undersigned recommends that habeas relief be denied on Petitioner's allegations regarding insufficiency of the evidence in Grounds One and Two.

## II.  Grounds Three and Four - Suppression of Evidence and Lack of a New Trial

In Ground Three, Petitioner alleges that the trial court failed to grant a new trial based on newly discovered, exculpatory evidence - the damaged, bloody pants which Petitioner had been wearing at the time of the fight with Mr. Cole.  Amended Petition, p. 5.  In Ground Four, Petitioner sets out his claim that the State suppressed that evidence.  *Id.*, p. 6.  The undersigned recommends denial of habeas relief on both claims.

After his trial, Petitioner discovered that the pants he had been wearing the night of the altercation had been in the possession of the county jail.  *See* Response, Ex. 1, pp.17-18.

These pants allegedly "showed a cut on the leg and [had] the blood of Mr. Spoor [on them.]" *Id.*, p. 18. Petitioner argues that these pants would have corroborated his self-defense theory, because they "not only prove that Mr. Spoor was indeed injured as well, but they call into question Mr. Cole's testimony in which he claimed never to have used a knife during the fight." *Id.*, pp. 19, 21.

In *Brady v. Maryland*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In *United States v. Bagley,* the Supreme Court extended the *Brady* holding to include impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985).

To prevail on a *Brady* claim, Petitioner "must demonstrate that '(1) the prosecution[6] suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense.'" *Scott v. Mullin*, 303 F.3d 1222, 1230 (10th Cir. 2002) (citation omitted). Evidence is considered "favorable" to the accused when it is exculpatory or impeaching. *See Banks v. Dretke*, 540 U.S. 668, 691 (2004). For materiality, the Court

---

[6]Petitioner admits that the prosecutor had not known about the existence of the pants, but correctly argues that the police officers' knowledge of the pants is imputed to the State. Response, Ex. 1, pp. 21-22. *See United States v. Smith*, 534 F.3d 1211, 1223 (10th Cir. 2008) ("a defendant may base a *Brady* claim on a piece of material evidence not disclosed by an investigator, even if the prosecutor did not know of the evidence" (citation omitted)); *United States v. Velarde*, 485 F.3d 553, 559 (10th Cir. 2007) ("a defendant may base a *Brady* claim on a government investigator's failure to disclose evidence material to guilt or punishment, even when the prosecutor personally did not know of that evidence" (citation omitted)).

examines the "withheld evidence in light of the entire record in order to determine if 'the omitted evidence creates a reasonable doubt that did not otherwise exist.'" *Banks v. Reynolds*, 54 F.3d 1508, 1518 (10th Cir. 1995) (citations omitted).

Petitioner raised these claims on direct appeal, and the OCCA concluded that Petitioner failed to show that the trial court had erred in denying his motion for a new trial or that he was denied a fair trial by the failure to produce the pants. *See* Response, Ex. 3, p. 2. This decision was reasonable,[7] precluding habeas relief.

The parties do not dispute that the pants were not made available to Petitioner before trial.[8] Further, there is little doubt that the evidence was favorable to Petitioner. Indeed, introduction of the pants could have bolstered Petitioner's testimony that Mr. Cole had a knife during the altercation and would have somewhat discredited the victim's testimony. Thus, the relevant question is whether the pants were "material" - that is, in light of the entire record would introduction of the pants have "create[d] a reasonable doubt that did not otherwise exist." *Banks v. Reynolds*, 54 F.3d at 1518.

---

[7]The OCCA did not cite to federal law and did not articulate the proper standard for a *Brady* claim. *See supra* p. 13. Nevertheless, "state courts need not refer to, or even be aware of, controlling Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Matthews v. Workman*, 577 F.3d 1175, 1183 n.2 (10th Cir. 2009) (citations omitted), cert. denied, __ U.S. __, 130 S. Ct. 1900 (2010).

[8]The parties do dispute whether the pants were requested. Petitioner states the pants should have been produced under the general discovery request for "any and all exculpatory evidence, of any kind or nature, which may possibly aid in his defense[.]" Response, Ex. 1, p. 17 & O.R., pp. 34-36. Respondent argues that the defense was required to specifically ask for the pants, which were known to Petitioner to exist. Response, pp. 17-18, 22-23. The dispute is irrelevant because the pants were not material for purposes of a *Brady* violation. *See infra* pp. 13-14.

The undersigned concludes that the pants were not "material." Petitioner relies on the pants to bolster his testimony that Mr. Cole had a weapon and that Petitioner was injured. *See supra*, pp. 11-12. However, even if the pants had convinced the jury of those facts, Petitioner's provocation of the fight and his own admission that he voluntarily entered into mutual combat were fatal to his self-defense claim. *See id.*, pp. 7-8. Under those circumstances, the undersigned cannot conclude as a matter of law that the pants constituted "material" evidence under *Brady*. Accordingly, Petitioner cannot obtain habeas relief for either the alleged *Brady* violation, or for the trial court's refusal to grant Petitioner a new trial. *See McCarty v. Dorsey*, No. 96-2132, 1997 WL 259444, at *1-4 (10th Cir. May 19, 1997) (unpublished op.) (finding that evidence was not "material" under *Brady* and affirming denial of habeas relief on claim that State suppressed evidence until after trial and that trial court refused to grant motion for a new trial).

For the foregoing reasons, the OCCA's rejection of the claims was reasonable, and the undersigned recommends denial of Grounds Three and Four.

## III. Ground Five:  Erroneous Jury Instruction

Petitioner alleges in Ground Five that the jury was improperly instructed on the "deadly weapon" element. Amended Petition, p. 7; Response, Ex. 1, p. 24. Specifically, Petitioner objects to the trial court's instruction that a "dangerous weapon" was "'any implement likely to produce death or great bodily harm in the manner it is used or attempted to be used'" and that a "deadly weapon" was "'any instrument designed to cause death or great bodily harm'" including a "'dagger, bowie, or dirk knife.'" Response, Ex. 1, p. 24

14

(citation omitted).  Petitioner argues that by listing examples of various knives in the deadly

weapon instruction, but not listing examples of dangerous weapons, the jury was mislead and

had "little choice" but to convict Petitioner of the more serious charge.  *Id.*, pp. 24-26.  On

direct appeal, the OCCA rejected the claim stating:  "Spoor has not shown that his jury was

mislead by the definitions of deadly and dangerous weapons given by the court without

objection."  *Id.*, Ex. 3, p. 2.  The undersigned concludes that habeas relief is not warranted

on this claim.

Errors relating to jury instructions in a state criminal trial do not support federal

habeas relief "'unless they are so fundamentally unfair as to deprive petitioner of a fair trial

and to due process of law.'"  *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997)

(citation omitted).  Thus, "[t]he question in such a collateral proceeding is 'whether the ailing

instruction by itself so infected the entire trial that the resulting conviction violates due

process.'"  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (citation omitted).  Petitioner bears

a heavy burden to establish constitutional error based on an erroneous jury instruction.  *See*

*Nguyen v. Reynolds*, 131 F.3d at 1357.

Petitioner has failed to show that the instruction was either erroneous or

fundamentally unfair.  For example, Petitioner admits that listing types of weapons in the

jury instruction on "deadly" weapons is "appropriate."  Response, Ex. 1, p. 24; *see also*

OUJI-CR 4-28.  He only challenges the instruction because examples of "dangerous"

weapons were not listed in the instruction.  *See supra* pp. 14-15.  However, Petitioner was

charged with two distinct crimes:  assault and battery with a deadly weapon for using a knife

to assault Mr. Cole (Count I), and assault and battery with a dangerous weapon for attempting to harm Mr. Cole with the truck (Count II). *See* O.R., pp. 6, 162. Thus, the jury was never asked to chose between finding that the knife was "deadly" or "dangerous" under Oklahoma law. Instead, the jury was charged with deciding whether the knife met the definition of a "deadly weapon" and whether Petitioner's truck met the definition of a "dangerous weapon." Under these circumstances, there is no basis for finding that the instruction was erroneous, or that it mislead the jury so as to cause a fundamentally unfair result. Consequently, the undersigned recommends that Ground Five be denied.

## Procedurally Defaulted Claims

Respondent argues that Petitioner failed to properly exhaust his claims arising in Grounds Six through Ten and that those claims are procedurally barred. Response, pp. 24-31. The undersigned agrees.

Habeas relief is ordinarily prohibited if a claim was procedurally barred in state court on independent and adequate state procedural grounds. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). One exception exists if Petitioner can show cause and prejudice related to the default. *See id.* For "cause" Petitioner must show an external impediment preventing compliance with the procedural rule. *See id.* at 753. Absent a finding of "cause," the Court need not consider assertions of "prejudice." *Cole v. New Mexico*, 58 Fed. Appx. 825, 830 (10th Cir. 2003).

Alternatively, Petitioner can show a fundamental miscarriage of justice. *See Demarest v. Price*, 130 F.3d 922, 941 (10th Cir. 1997). To invoke this exception, Petitioner must

"'supplement[] his constitutional claim with a colorable showing of factual innocence.'"
*Brecheen v. Reynolds*, 41 F.3d 1343, 1357 (10th Cir. 1994) (citations omitted).

In Grounds Six through Ten, Petitioner raises:  (1) a new *Brady* claim based on
"additional evidence not included in Ground Four," (2) ineffective assistance of trial and
appellate counsel, (3) a violation of due process through the State's "failure to collect
evidence," and (4) cumulative error.  Amended Petition, pp. 8-12.

Petitioner did not raise these claims on direct appeal.  *See* Response, Ex. 1, pp. 1-28.
His claims involving a new *Brady* claim and ineffective assistance of trial counsel were
raised in Petitioner's first application for post-conviction relief.  *See id.*, Ex. 8, p. 1; Ex. 9,
pp. 1-2.  The state court denied Petitioner's application, and Petitioner failed to perfect an
appeal.  *See id.*, Ex. 5, p. 2.  Rather than seek permission to file an appeal out of time,
Petitioner made a strategic decision to file a second application for post-conviction relief
instead.  *See* Petitioner's Reply, p. 5.  There, Petitioner raised for the first time his claims
regarding ineffective assistance of appellate counsel, a violation of due process through the
State's "failure to collect evidence," and cumulative error.  Response, Ex. 9.  The second
application was also denied.  *See id.*

On appeal the OCCA stated:  "The denial of Petitioner's first post-conviction
application was not appealed to this Court.  These issues are barred by the doctrine of *res
judicata* or have been waived."  Response, Ex. 5, p. 2.  The appellate court further found that
all claims that had not been raised in the first application for post-conviction relief were
waived under Okla. Stat. tit. 22 § 1086.  *Id.*

## I.  **Independent and Adequate State Procedural Grounds**

In order to appeal the denial of his first application for post-conviction relief, Petitioner was required to file a notice and petition in error with an accompanying brief with the OCCA.  *See* Rule 5.2(C)(1)-(2), Rules of the Oklahoma Court of Criminal Appeals.  His failure to do so deprived the OCCA of jurisdiction and constituted a "wavier of [his] right to appeal."  Rule 5.2(C)(5), Rules of the Oklahoma Court of Criminal Appeals.

Despite Petitioner's argument to the contrary, this rule constitutes an independent and adequate state procedural ground barring federal habeas review.  *See Johnson v. Champion*, 288 F.3d 1215, 1227 n.3 (10th Cir. 2002) (finding "little doubt" that OCCA's "declination of jurisdiction" was "'independent' of federal law" and "'adequate'").  Further, the fact that one of Petitioner's relevant claims involves ineffective assistance of trial counsel does not change that finding.  *See Falls v. Williams*, No. CIV-09-1133-D, 2010 WL 4054400, at *12 (W.D. Okla. Sept. 9, 2010) (unpublished op.) (holding that where OCCA rejected claims of ineffective assistance of trial counsel not because they should have been raised on direct appeal but because petitioner failed to timely appeal from the denial of an application for post-conviction relief under Rule 5.2(C)(5), waiver was independent and adequate for purposes of procedural bar).

Thus, Petitioner's allegations involving a new *Brady* claim and ineffective assistance of trial counsel were independently and adequately barred under state law.

Petitioner's remaining claims involving ineffective assistance of appellate counsel, a violation of due process through the State's failure to collect evidence, and cumulative error

were deemed waived under Okla. Stat. tit. 22 § 1086 by the OCCA. *See supra* pp. 17-18.

That statute states that:

> All grounds for relief available to an applicant under [the Uniform Post-Conviction Procedure Act] must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the prior application.

Okla. Stat. tit. 22 § 1086.

The Tenth Circuit has deemed § 1086 an independent and adequate state procedural bar. *See Ellis v. Hargett*, 302 F.3d 1182, 1186 (10th Cir. 2002) (holding Okla. Stat. tit. 22 § 1086 "is an independent and adequate state ground for denying habeas relief"). Thus, these claims were also barred under independent and adequate state law.

## II.  Cause and Prejudice

Petitioner offers no excuse for failing to raise his claims regarding ineffective assistance of appellate counsel, a violation of due process through the State's failure to collect evidence, and cumulative error in his first application for post-conviction relief. *See* Petitioner's Reply, pp. 3-6. Consequently, Petitioner has failed to show cause and prejudice for these claims.

For his new *Brady* claim and allegation of ineffective assistance of trial counsel, Petitioner blames his failure to appeal the first application for post-conviction relief on the military deployment of his attorney. Petitioner's Reply, p. 5. However, this excuse does not

suffice for two reasons.

First, Petitioner lacked a constitutional right to effective assistance in post-conviction proceedings; therefore, his attorney's alleged failure to appeal the post-conviction denial cannot constitute "cause." *See Coleman v. Thompson*, 501 U.S. at 752 (holding that a petitioner cannot claim "constitutionally ineffective assistance of counsel" in state post-conviction proceedings); *Benavidez v. Martin*, No. 98-6277, 1998 WL 852681, at *3 (10th Cir. Dec. 10, 1998) (unpublished op.) (holding that because petitioner lacked a constitutional right to counsel during post-conviction proceedings, "ineffective assistance" cannot be the "cause" of petitioner's failure to timely appeal the denial of his post-conviction application).

Second, Petitioner could have raised his attorney abandonment theory in a properly filed motion to appeal out of time in the district court. *See* Rule 2.1(E)(1), Rules of the Oklahoma Court of Criminal Appeals. Instead, Petitioner made a strategic decision to proceed with a second application for post-conviction relief, raising additional claims. *See supra* p. 17. As such, Petitioner cannot show that the lack of post-conviction appeal was due to an "external impediment." *Supra* p. 16. Consequently, Petitioner has also failed to show cause and prejudice for these claims.

## III. Fundamental Miscarriage of Justice

To invoke a fundamental miscarriage of justice exception, Petitioner was required to "'supplement[] his constitutional claim with a colorable showing of factual innocence.'" *Brecheen v. Reynolds*, 41 F.3d at 1357 (10th Cir. 1994) (citations omitted). Here, Petitioner

does not dispute that he engaged in a knife fight with Mr. Cole, wherein Mr. Cole was stabbed. *See supra* p. 3. Instead, he strenuously argues that he was acting in self-defense. *See id.* A claim of self-defense, however, is a claim of *legal* innocence as opposed to *factual* innocence. Arguments premised on legal mitigation alone do not satisfy the fundamental miscarriage of justice exception. *See Ellis v. Hargett*, 302 F.3d at 1186 n. 1 (rejecting miscarriage of justice argument because it merely "assert [s] that [petitioner] is legally innocent because his conduct is justified or mitigated by the doctrines of self-defense or heat of passion"). Accordingly, Petitioner has failed to show a fundamental miscarriage of justice.

## IV. <u>Summary</u>

The OCCA applied independent and adequate state law to reject Petitioner's claims, and Petitioner has neither shown cause and prejudice nor a fundamental miscarriage of justice to satisfy an exception to procedural bar. Consequently, the undersigned recommends denial of Grounds Six through Ten on this basis.

## <u>RECOMMENDATION</u>

Based upon the foregoing analysis, it is recommended that the Petition for a Writ of Habeas Corpus be denied.

Petitioner is advised of his right to file an objection to this Report and Recommendation in accordance with Fed. R. Civ. P. 72(b)(2). Any such objection must be filed with the Clerk of this Court by the 28th day of November, 2011. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his

right to appellate review of both factual and legal questions contained herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 7th day of November, 2011.


_____
BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE